UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| MICHELLE TIPTON, | ) |
| | ) |
|     *Petitioner*, | ) |
| | ) |
| v. | )    No.: 3:12-CV-207-TAV-CCS |
| | ) |
| VICKI FREEMAN,[1] Warden, | ) |
| Tennessee Prison for Women, | ) |
| | ) |
|     *Respondent*. | ) |

# MEMORANDUM OPINION

Michelle Tipton ("Petitioner"), a Tennessee inmate acting pro se, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the legality of her confinement under a 2003 Sevier County, Tennessee Circuit Court judgment [Doc. 1]. A jury convicted Petitioner of first degree felony murder and second degree murder, for which she received a life sentence after the second degree murder conviction was merged into the first degree felony murder conviction. Respondent has filed an answer to the petition, which is supported by copies of the state record [Docs. 7, 8]. Respondent subsequently filed a motion to construe the answer as a motion for summary judgment [Doc. 9], which the Court denied [Doc. 15]. Petitioner has filed a reply to Respondent's answer [Doc. 18].

---

[1] Warden Vicki Freeman replaced Deborah Johnson as Warden of the Tennessee Prison for Women on November 1, 2013. Accordingly, the Clerk is **DIRECTED** to change the name of the Respondent to Vicki Freeman on the Court's CM/ECF docket sheet.

## I. PROCEDURAL HISTORY

Petitioner's conviction for felony-first degree murder was affirmed on direct appeal; however, the Tennessee Court of Criminal Appeals ("TCCA") reversed the second degree murder conviction and affirmed Petitioner's life sentence. *See State v. Tipton*, No. E2004-01278-CCA-R3-CD, 2005 Tenn. Crim. App. LEXIS 919 (Tenn. Crim. App. Aug. 22, 2005). The Tennessee Supreme Court ("TSC") denied permission to appeal. *State v. Tipton*, No. E2004-01278-SC-R11-CD, 2006 Tenn. LEXIS 28 (Tenn. Jan. 30, 2006). Petitioner's subsequent application for post-conviction relief was denied by the trial court, and the denial was affirmed on appeal by the TCCA. *Tipton v. State*, No. E2009-00236-CCA-R3-PC, 2010 Tenn. Crim. App. LEXIS 11 (Tenn. Crim. App. Jan. 6, 2010). The TSC denied Petitioner's application for permission to appeal. *Tipton v. State*, No. E2009-0036-SC-R11-CD, 2010 Tenn. LEXIS 527 (Tenn. May 20, 2010). Petitioner next filed a state habeas corpus petition which was denied by the Davidson County Criminal Court, and the denial affirmed on appeal by the by the TCCA. *Tipton v. State*, No. M2011-00190-CCA-R3-HC, 2011 Tenn. Crim. App. LEXIS 919 (Tenn. Crim. App. Dec. 13, 2011). The TSC denied permission to appeal. *Tipton v. State*, No. M2011-00190-SC-R11-HC, 2012 Tenn. LEXIS 250 (Tenn. Apr. 12, 2012). Petitioner then filed this timely application for federal habeas relief.

## II. BACKGROUND

The following summary of the factual background is taken from the TCCA's opinion on direct appeal of Petitioner's conviction.

At approximately 5:00 a.m. on October 4, 2000, David Reynolds, Jr. called to check on Pamela Hale who was employed as a clerk at Family Inns East in Pigeon Forge but was unable to get a response. Reynolds, who held a supervisory position with a local hotel chain, which included Family Inns East, had previously spoken with Hale three times on the night of October 3 regarding an auditing problem. Because Hale had been sick the previous evening, Reynolds asked an employee at another hotel to check on Hale. Arriving at Family Inns East, the employee informed Reynolds that a Pigeon Forge police officer was at the motel. Reynolds arrived at the scene around 6:00 a.m., and found Hale lying behind her desk in a pool of blood.

Wayne Knight, an evidence technician with the Pigeon Forge Police Department, arrived at Family Inns East in the early morning hours of October 4, 2000, and found the motel's office in a state of disarray. Coins were lying on the floor, cash drawers and computer monitors were turned over on the check-out counter, and a phone had been knocked off a desk to the right of the check-in counter. The victim was lying face down on the floor behind the desk. In the course of his investigation, Knight determined that some of the cash drawers were missing. Later that afternoon, the missing drawers were discovered on the banks of the Little Pigeon River.

Elizabeth Reid, a forensic scientist with the Tennessee Bureau of Investigation's crime lab, testified that she examined the cash drawers and dusted them for fingerprints. Finding latent prints on the drawers, she compared them with the fingerprints of Brandon Tipton and identified a match. She also received [Petitioner's] fingerprint card but did not identify her prints on the drawers. Detective Tim Trentham with the Pigeon Forge Police Department testified that on July 13, 2001, Brandon Tipton was interviewed as [a] result of his fingerprints on the cash boxes. Later that day, Brandon Tipton gave a statement to the police implicating himself and [Petitioner] in the homicide and robbery. The same day [Petitioner] gave a statement to Special Agent A. R. McCall with the Tennessee Bureau of Investigation and Jake Stinnett of the Pigeon Forge Police Department that she was not with Brandon Tipton on the night of October 3, 2000; however, she confirmed that she did return to their residence around 7:00 a.m. the next morning. Later that evening Barbara Ward, CID Lieutenant with the Pigeon Forge Police, received a phone call from [Petitioner] stating that she lied in her earlier statement and that she was in fact at the residence on the night of October 3, 2000.

On July 14, 2001, [Petitioner] appeared at the Pigeon Forge Police Department to inquire about her husband's status. Detective Trentham advised [Petitioner] of her Miranda rights, which she signed, and he handed

3

[Petitioner] her husband's statement. Trentham testified that [Petitioner] "read the first page of the confession, flipped to the second page and began reading it at some point, I don't know how far she read into the second page, she laid it down and said, that's true, that's what happened." Trentham then interviewed [Petitioner] and prepared a written statement which she read, made changes to, and signed. [Petitioner's] statement reads:

> After midnight me and Brandon went to Gatlinburg. Brandon was going to burglarize TCYB [sic] on Airport Road. When we got there a police officer was parked nearby and we couldn't do it. Later that night we drove to Pigeon Forge. We saw the lights on in Family Inns East and the clerk inside. I parked near the office and Brandon and I went in and ask[ed] about a room. We got a key from the lady desk clerk and looked at a room. We returned to the office. Brandon walked to the brochure rack to the left of the desk where the clerk was standing. Without warning, Brandon hit the desk clerk in the head with bolt cutters. The clerk grabbed her head and Brandon hit her a couple more times. Brandon grabbed the cash drawers and we ran to my car. We left the motel and drove to our apartment at 522 1/2 Oldham Street. We took the cash boxes inside and Brandon got them open. There was approximately $500-$600 inside. We loaded the boxes back in the car and drove south through Pigeon Forge and onto the Spur. We turned at the first bridge and down north toward Pigeon Forge. I stopped at the first pull off just before Pigeon Forge. Brandon threw the cash boxes in the river. We then drove to Iron Mountain Road and Brandon threw the bolt cutters into the woods.

Based on this information, Trentham located the bolt cutters. He later spoke with [Petitioner] at the Sevier County Jail where [Petitioner] drew a diagram of Family Inns East. She also asked whether her fingerprints were obtained from the scene and stated that she was careful not to leave any fingerprints at the office pulling her sweater over her hands. She also stated that when pulling out of the parking lot of Family Inns East she had accidentally hit Brandon's leg.

Nichole Frierson Nutting testified that while incarcerated at the Sevier County Jail on misdemeanor convictions, she came in contact with [Petitioner]. [Petitioner] told Nutting that she and her husband had planned to rob Family Inns East; however, the victim had recognized them as

4

employees of the Log Cabin Pancake House. [Petitioner] told her that she and Brandon used bolt cutters to kill the victim and that they took cash boxes from the motel, discarded them on the Spur between Pigeon Forge and Gatlinburg, and used part of the money to get married the next day. The State introduced a marriage certificate showing [Petitioner] and Brandon Tipton were married on October 5, 2000. Yvonne King, manager of the dining room of the Log Cabin Pancake House in Pigeon Forge, testified that [Petitioner] worked at the restaurant as a waitress from March until May of 2000 and that Brandon Tipton was employed as a busboy until May of 2000.

At trial, [Petitioner] testified that on the day of the crime, Brandon Tipton gave her Klonopin pills which made her memory "blotchy." After midnight, she and Brandon Tipton drove to Gatlinburg to burglarize TCBY. [Petitioner] had previously worked at the store and knew that it had a cash box and a small padlock on the door. Their plans were thwarted when they discovered a police officer at the end of the street near TCBY, so they headed back home. En route, Brandon told [Petitioner] to pull into Microtel in Pigeon Forge. The couple walked in, asked the price of a room, and walked out. She testified that on the way to Sevierville, Brandon told her to stop at Family Inns East, which was located less than a mile from the couple's home. Brandon asked the clerk if he could see a room, and the clerk handed him a key. They inspected a room and returned to the office where [Petitioner] suddenly saw Brandon swinging bolt cutters at the victim's head. [Petitioner] testified that at this point she ran out the front door to her car. As she began to back out, Brandon opened the passenger door and she hit him with the car. When they arrived at the apartment, [Petitioner] ran upstairs, and Brandon sat in the livingroom opening the cash boxes. He then directed [Petitioner] to drive back into Pigeon Forge where he threw the cash boxes out the window.

Dr. Cleland Blake, who was the Assistant State Chief Medical Examiner in October of 2000, performed an autopsy on the victim. He stated that the victim had one blunt traumatic injury to the high center of her forehead. Additionally, he testified that the victim had around fourteen blunt trauma injuries to the top of her head which tore the scalp at several points and crushed the skull bone into the brain. Dr. Blake opined that the cause of death resulted from "damage" and "hemorrhage into the brain."

A presentment was returned by a Sevier County grand jury charging [Petitioner] with first degree premeditated murder and first degree felony murder. [Petitioner's] trial commenced on July 29, 2003, with the jury returning a guilty verdict for second degree murder and first degree felony

5

murder on July 31. The jury fixed [Petitioner's] sentence at life imprisonment, and the trial court merged [Petitioner's] conviction for second degree murder into her conviction for first degree felony murder.

*Tipton*, 2005 Tenn. Crim. App. LEXIS 919, at *2–10.

### III. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), codified in 28 U.S.C. § 2241, requires a court considering a habeas claim to defer to any decision by a state court concerning the claim, unless the state court's judgment: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1)–(2).

A state court's decision is "contrary to" federal law when it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or resolves a case differently on a set of facts which cannot be distinguished materially from those upon which the precedent was decided. *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Under the "unreasonable application" prong of 2254(d)(1), the relevant inquiry is whether the state court decision identifies the legal rule in the Supreme Court cases which govern the issue, but unreasonably applies the principle to the particular facts of the case. *Id*. at 407. The habeas court is to determine only whether the state court's decision is objectively reasonable, not whether, in the habeas court's view, it is incorrect or wrong. *Id*. at 411.

6

The § 2254(d) standard is a high standard to satisfy. *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (noting that § 2254(d), as amended by AEDPA, is a purposefully demanding standard . . . 'because it was meant to be.'" (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)). Further, findings of fact which are sustained by the record are entitled to a presumption of correctness—a presumption which may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

IV. **ANALYSIS**

Petitioner's § 2254 habeas corpus petition raises four main grounds for relief: (1) there was insufficient evidence to support the conviction of first degree felony murder; (2) the admission of testimony from Nichole Frierson Nutting was prejudicial because Petitioner was given insufficient notice; (3) several instances of ineffective assistance of counsel; and (4) the judgment rendered a non-existent sentence [Doc. 1].

In her response, Respondent argues that Petitioner is not entitled to relief on any of her claims because the state court decision rejecting the claims on their merits are entitled to deference under 28 U.S.C. § 2254 [Doc. 7]. The Court agrees with Respondent concerning Petitioner's entitlement to habeas relief, and for the reasons which follow, will **DENY** and **DISMISS** this petition. Petitioner's grounds for relief will be discussed in the order in which they were presented in her petition.

A. **Insufficient Evidence**

In her first claim, Petitioner contends that the evidence produced at trial was insufficient to support a conviction for first degree felony murder. According to

7

Case 3:12-cv-00207-TAV-CCS   Document 21   Filed 10/15/15   Page 7 of 19   PageID #: 1258

Petitioner, she was convicted solely on a theory of criminal liability based on the fact that she was present at the time the crime was committed [Doc. 18 p. 12]. Petitioner argues that the proof presented at trial did not establish that she committed any of the charged crimes, or that she solicited, directed, aided, or attempted to aid her co-defendant in the commission of the charged crimes [*Id.*].

### 1. Applicable Law

The United State Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307 (1979), provides the controlling authority for resolving claims of insufficient evidence. *See Gall v. Parker*, 231 F.3d 265, 287–88 (6th Cir. 2000) (identifying *Jackson* as the governing precedent for all claims of insufficient evidence), *superseded by statute on other grounds as recognized by Parker v. Matthews*, 132 S. Ct. 2148 (2012). In *Jackson*, the Supreme Court held that evidence, when viewed in the light most favorable to the prosecution, is sufficient if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. 443 U.S. at 319. Resolving conflicts in testimony, weighing the evidence, and drawing reasonable inferences from the facts are all matters which lie within the province of the trier of fact. *Id.*; *see also Cavazos v. Smith*, 132 S. Ct. 2, 6 (2011) ("[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" (quoting *Jackson*, 443 U.S. at 326)).

8

Case 3:12-cv-00207-TAV-CCS   Document 21   Filed 10/15/15   Page 8 of 19   PageID #: 1259

A habeas court reviewing an insufficient evidence claim must apply two levels of deference. *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007). Under *Jackson*, deference is owed to the fact finder's verdict, "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008) (citing *Jackson*, 443 U.S. at 324 n.16). Under AEDPA, deference is also owed to the state court's consideration of the fact finder's verdict. *Smith*, 132 S. Ct. at 6 (noting the double deference owed "to state court decisions required by § 2254(d)" and "to the state court's already deferential review."). Hence, a petitioner bringing a claim of insufficient evidence "bears a heavy burden." *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986).

### 2. Discussion

Citing *Jackson v. Virginia*, the TCCA stated that "the relevant question for the reviewing court is 'whether, after reviewing the evidence in the light most favorable to the State, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Tipton*, 2005 Tenn. Crim. App. LEXIS 919, at *10 (citing *Jackson*, 443 U.S. at 319) (emphasis in original). The TCCA defined the offense of felony murder as "the 'killing of another committed in the perpetration of or attempt to perpetrate any robbery.'" *Id*. at *15 (citing Tenn. Code Ann. § 39-13-202(a)(2) (2003)). Based on this definition, and following the guiding principle in *Jackson*, the TCCA found that the evidence presented at trial was legally sufficient to support Petitioner's conviction for first degree felony murder. *Id*. at *16. As such, the Court must now

9

determine whether the State court's application of *Jackson* to the facts of Petitioner's case was unreasonable.

Summarizing the proof sustaining Petitioner's felony murder conviction, the TCCA pointed to the fact that Petitioner adopted the statement of her co-defendant, Brandon Tipton, which revealed that Petitioner and her co-defendant discussed robbing the motel as they approached Family Inns East, that Petitioner pulled the phone cord from the desk while her co-defendant repeatedly hit the victim over the head with bolt cutters, and that Petitioner and her co-defendant left the scene together with the cash boxes. *Id*. at *15–16.

Petitioner contends that the proof furnished at trial was not sufficient to find her criminally responsible for the actions of her co-defendant [Doc. 18 p. 14]. According to Petitioner, the "trier of the facts were not given all the facts to consider" [Doc. 18 p. 11]. However, Petitioner has not provided the Court with any particular facts that were not presented to the jury. Regardless, the Court concludes that the state court reasonably determined that the proof in Petitioner's case was constitutionally sufficient to support the conviction of felony first degree murder. The jury had before it Petitioner's confession, her adoption of her co-defendant's statement, testimony from the police officer that took her statement, and testimony from an inmate concerning Petitioner's words and conduct. While the jury also heard testimony from Petitioner refuting her prior confession, it is solely within the discretion of the jury to decide which version of the facts to accept. As the Court has previously noted, "[r]esolving conflicts in

10

testimony, weighing the evidence, and drawing reasonably inferences from the facts are all matters which lie within the province of the trier of fact." *Jackson*, 443 U.S. at 319.

Based on the evidence presented in the trial court, the Court finds that there was sufficient evidence for any rational trier of fact to have found that the essential elements of first degree felony murder existed beyond a reasonable doubt. *See id*. As the TCCA defined it, "'[w]hen one enters into a scheme with another to commit one of the felonies enumerated in the felony murder statutes, and death ensues, both defendants are responsible for the death regardless of who actually committed the murder and whether the killing was specifically contemplated by the other.'" 2005 Tenn. Crim. App. LEXIS 919, at *15 (quoting *State v. Hinton*, 42 S.W.3d 113, 119 (Tenn. Crim. App. 2000)). The state court found that Petitioner was statutorily responsible for the murder of the victim during the course of the robbery of the motel based on the evidence presented at trial. The Court cannot find that this decision was unreasonable nor was it based on an unreasonable determination of the facts. As such, Petitioner is not entitled to relief on this claim.

### B. Insufficient Notice of Prosecution's Witness

Petitioner next argues that she was prejudiced by the state court's admission of testimony from prosecution witness, Nicole Frierson Nutting [Doc. 1 p. 7]. Petitioner argued before the state court that the only notice that she received of Nicole Nutting's testimony was a letter dated January 22, 2003, which identified Ms. Nutting by her

11

maiden name and did not provide an address. *State v. Tipton*, Tenn. Crim. App. LEXIS 919, at *21.

While pretrial disclosure of the witnesses who might testify against a criminal defendant may be required by state law or court rules, the Due Process Clause of the federal Constitution does not impose such a requirement. *See Weatherford v. Bursey*, 429 U.S. 545 (1977). Therefore, a claim based on a state rule governing the pretrial disclosure of witnesses does not present a cognizable habeas claim because it is not a constitutional violation. *See Lorraine v. Coyle*, 291 F.3d 46, 441 (6th Cir. 2002) (finding that a violation of an Ohio rule of criminal procedure was not a constitutional violation). Accordingly, Petitioner is not entitled to relief because this claim is not cognizable on habeas relief.

### C. Ineffective Assistance of Counsel

Petitioner next asserts that she received ineffective assistance of counsel from her trial attorney with respect to counsel's statements in both his opening and closing statements stating that Petitioner was guilty, because counsel failed to zealously defend her, and because counsel forgot to object to testimony from some of the prosecution's witnesses [Doc. 1 p. 8].[2]

---

[2] Petitioner's reply to Respondent's answer appears to raise additional grounds of ineffective assistance of counsel such as: (1) counsel's failure to argue double jeopardy for her felony murder and second degree murder convictions; and (2) counsel's failure to argue for merger based on both convictions [Doc. 18 p. 30]. Petitioner did not raise these arguments in her initial petition for habeas corpus relief, nor does it appear that Petitioner raised these claims before the TCCA. As a result, these claims are procedurally defaulted. In any event, Petitioner cannot prove prejudice from these claims as her second degree murder conviction was overturned on appeal.

12

### 1. Applicable Law

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A criminal defendant's Sixth Amendment right to counsel necessarily implies the right to "reasonably effective assistance" of counsel. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the *Strickland* standard for proving ineffective assistance of counsel, a defendant must meet a two-pronged test: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *Id*.

Proving deficient performance requires a "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. The appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id*. at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged to not have been the result of reasonable professional judgment." *Id*. at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). It is strongly presumed that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

The second prong, prejudice, "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable." *Id*. Here, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003) (quoting *Strickland*, 466 U.S. at 694) (internal quotation marks omitted). Counsel is constitutionally ineffective only if a performance below professional standards caused the defendant to lose what he "otherwise would have probably won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

### 2. Discussion

Petitioner challenged the effectiveness of her trial counsel, arguing to the TCCA that counsel: (1) made inappropriate statements during opening and closing arguments; (2) failed to object to a detective's testimony about her facial expression; and (3) failed to object to testimony about her lack of remorse. *Tipton v. State*, 2010 Tenn. Crim. App. LEXIS 11, at *18. The TCCA, applying *Strickland*, concluded that Petitioner had not met her burden of proving deficient performance or prejudice. *Id*. at *28–30. Thus, the task before the Court is to determine whether the state Court's application of *Strickland* to the facts of Petitioner's case was unreasonable.

#### a. Statements During Opening and Closing Argument

Petitioner generally argues that her trial counsel made several damaging and prejudicial statements during his opening and closing statements [Doc. 18 p. 30].

14

Petitioner points to counsel's statements, among others, that Petitioner was guilty, that she was responsible, and that she needed to be punished [*Id*.]. According to Petitioner, her trial counsel did not prepare an adequate defense, and he was ineffective because his only defense was to argue that she was guilty of a lesser-included offense [*Id*.].

*Strickland* instructs that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." 466 U.S. at 690. During the post-conviction hearing, trial counsel testified that his trial strategy was to prove that Petitioner may have been guilty of merely being an accessory after the fact, but not of felony murder [Addendum No. 2, Vol. 3, p. 8]. He further testified that when he stated that Petitioner was guilty during his closing argument, he qualified it by saying that she was guilty, but not of murder [*Id*. at 11]. According to counsel, Petitioner's statement where she admitted her guilt and said that she needed to be punished had been admitted into evidence, and he had to do his best to work around that [*Id*.].

Petitioner has not overcome the very strong presumption that counsel's statements in his opening and closing arguments "might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. Furthermore, the Court cannot analyze counsel's statements in isolation, but must view them in the context of counsel's entire argument. *See Moore v. Mitchell*, 708 F.3d 760, 790 (6th Cir. 2013) (citing *United States v. Lostia*, 20 F. App'x 501, 502 (6th Cir. 2001)). Based on the facts of this case and in light of the evidence available to the trial court, the Court cannot find that counsel's statements were not part of the constitutionally protected strategy that he chose to adopt.

15

As such, the Court finds that Petitioner is not entitled to relief on this issue because the state court's determination was not an unreasonable determination of the facts in light of the evidence presented to it.

### b. Failure to Object to Prosecution Witnesses' Testimony

Petitioner's next claim of ineffective assistance of counsel alleges that trial counsel "forgot" to object to the testimony of state witness, Nicole Frierson Nutting, who testified that while she was incarcerated with Petitioner, Petitioner revealed details of the crime to her and did not show any remorse. Petitioner also alleges that trial counsel was ineffective for failing to object to the testimony of Officer Trentham who testified to Petitioner's facial expression and demeanor during her interrogation [Doc. 18 p. 30].

During the post-conviction hearing, trial counsel testified that he did not object to Officer Trentham's statements once they were already on the record, although looking back, he probably should have [Addendum 2, Vol. 3, pp. 13–14]. With respect to the testimony from Nicole Nutting, trial counsel testified that while he did not object specifically to her statements about Petitioner's lack of remorse, he had objected unsuccessfully to her testimony during preliminary hearings and before she took the stand [*Id*. at 18]. In dismissing these claims, the state court found that Petitioner was not prejudiced by trial counsel's failure to object to these statements given the strength of evidence against her. *Tipton v. State*, 2010 Tenn. Crim. App. LEXIS 11, at *29.

The Court agrees with the TCCA's determination that Petitioner is not entitled to relief on this claim because Petitioner cannot show prejudice under *Strickland*. *See e.g.,*

16

*Strickland*, 466 U.S. at 697 (concluding that because both the performance prong and prejudice prong must be satisfied, if a petitioner cannot satisfy one, the other need not be examined). To show prejudice, Petitioner has to demonstrate that counsel's errors were such that there is a reasonable probability that the outcome of the proceedings would have been different absent the unprofessional errors. *Id*. at 694. The Court has previously found that the evidence against Petitioner was sufficient to sustain her conviction, and as the TCCA found, the wealth of the evidence against Petitioner minimized any perceived prejudicial effect from Officer Trentham or Nicole Frierson's testimony. Even further, the Court cannot find that trial counsel was ineffective when he in fact objected to the admission of Nicole Frierson's testimony in a preliminary hearing.

As such, the Court finds that the state court's decision on this claim was not unreasonable and Petitioner is not entitled to relief.

  **D.**  **Illegal and Non-existent Sentence.**

Petitioner's final claim alleges that the judgment rendered a non-existent and illegal sentence because she would never actually be eligible for parole based on the applicable Tennessee Code computation [Doc. 1 pp. 9–10]. Petitioner appears to argue that her sentence violates the Tennessee statute she was sentenced under because based on her sentence and possible credits, she would never actually be eligible for parole even though she was sentenced to life with the possibility of parole [Doc. 18 p. 32].

A petitioner seeking federal habeas relief may only do so on the ground that they are being held in violation of the Constitution, laws, or treaties of the United States. 28

17

U.S.C. § 2254(a); *Reed v. Farley*, 512 U.S. 339, 347 (1994). As a general matter, an allegation that a sentence has been imposed in violation of state sentencing law does not present a constitutional issue. *See Sneed v. Donahue*, 993 F.2d 1239, 1244 (6th Cir. 1993) (finding that an assertion that sentences were aggregated under state law causing an illegal total sentence is not a cognizable habeas corpus claim); *See also Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only."). Petitioner's assertion that her sentence was illegal and entered in violation of the Tennessee Code concerns purely an issue of state law. As such, it is not cognizable in this habeas proceeding.

## V. Conclusion

For the above mentioned reasons, the Court finds that Petitioner's claims do not warrant the issuance of a writ of habeas corpus. Therefore, Petitioner's petition for a writ of habeas corpus will be **DENIED**.

## VI. Certificate of Appealability

The Court must also consider whether to issue a Certificate of Appealability ("COA"), should Petitioner file a notice of appeal. Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a habeas proceeding only if issued a COA, and a COA may only be issued where a Petitioner has made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). Where a claim has been dismissed on the merits, a substantial showing is made if reasonable jurists could conclude the

18

Case 3:12-cv-00207-TAV-CCS   Document 21   Filed 10/15/15   Page 18 of 19   PageID #: 1269

issues raised are adequate to deserve further review. *See Miller-El v. Cockrell*, 537 U.S. 322, 327, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a claim has been dismissed on procedural grounds, a substantial showing is demonstrated when it is shown that reasonable jurists would debate whether a valid claim has been stated and whether the court's procedural ruling is correct. *Slack*, 529 U.S. at 484.

After reviewing each of Petitioner's claims, the Court finds that reasonable jurists would not conclude that Petitioner's claims are adequate to deserve further review. As such, because Petitioner has failed to make a substantial showing of the denial of a constitutional right, a COA will not issue.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan<br>
CHIEF UNITED STATES DISTRICT JUDGE